**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED APRIL 3, 2001**

FRANK W. LYNCH & CO.,

    Plaintiff-Appellee,

v

No. 115324

FLEX TECHNOLOGIES, INC., and FLEX
TECHNOLOGIES, LTD.,

    Defendants-Appellants,

and

ONTARIO, INC.,

    Defendant.

_____

BEFORE THE ENTIRE COURT

YOUNG, J.

The sales representatives' commissions act (SRCA), MCL 600.2961; MSA 27A.2961, provides, among other things, that, in addition to actual damages, a defendant may be liable for up to an additional $100,000 for an intentional failure to pay sales commissions when due. We granted leave to determine whether the SRCA should be applied retroactively.

The Court of Appeals followed its decision in *Flynn v Flint Coatings, Inc*, 230 Mich App 633; 584 NW2d 627 (1998), and held that the SRCA should be applied retroactively. We disagree and hold that the SRCA operates prospectively only. Accordingly, we overrule *Flynn*, reverse in part the Court of Appeals decision, and remand the case to the trial court for further proceedings.

I. Factual and Procedural Background

In 1990, plaintiff filed this action against defendants alleging breach of contract and unjust enrichment. Plaintiff's claims arise from a 1982 manufacturer's representative agreement with defendants' predecessor, Drut Industries, Ltd., which later became Mechanical Cables, Ltd. The agreement, which was amended in 1982 and 1983, basically provided that plaintiff would solicit sales of various automotive products manufactured by Drut and later Mechanical Cables. Defendants purchased the assets of Mechanical Cables in April 1989 and terminated plaintiff's services effective December 31, 1989.

Throughout the course of this litigation, the focus of the parties' contractual dispute has concerned such issues as whether defendants are bound by the original written agreement (not until fairly late in the proceedings did defendants even acknowledge that they had any responsibility to plaintiff

2

under the agreement), the circumstances under which the agreement could be terminated, and the appropriate rate for calculating commissions owed.  In that regard, there have been several trial court rulings and two Court of Appeals decisions pertaining to these issues.  However, we have limited the scope of this appeal to the retroactive applicability of the SRCA.

The SRCA became effective on June 29, 1992.  In August 1992, plaintiff moved to amend its complaint to include a claim under the act.  The SRCA provides, in relevant part:

> (4)  All commissions that are due at the time of termination of a contract between a sales representative and principal shall be paid within 45 days after the date of termination.  Commissions that become due after the termination date shall be paid within 45 days after the date on which the commission became due.
>
> (5)  A principal who fails to comply with this section is liable to the sales representative for both of the following:
>
> (a)  Actual damages caused by the failure to pay the commissions when due.
>
> (b)  If the principal is found to have intentionally failed to pay the commission when due, an amount equal to 2 times the amount of commissions due but not paid as required by this section or $100,000.00, whichever is less.
>
> (6)  If a sales representative brings a cause of action pursuant to this section, the court shall award to the prevailing party reasonable attorney fees and court costs.
>
> (7)  In an action brought under this section, jurisdiction shall be determined in accordance with

3

chapter 7.

      (8) A provision in a contract between a principal and a sales representative purporting to waive any right under this section is void.

      (9) This section does not affect the rights of a principal or sales representative that are otherwise provided by law. [MCL 600.2961; MSA 27A.2961.]

The trial court denied plaintiff's motion to amend on the ground that the SRCA "imposes a new duty and provides for a penalty . . . and attorney fees." In its first opinion in this case, the Court of Appeals agreed with the trial court that the SRCA should be given prospective application only, but reversed and remanded the case to the trial court for further proceedings on various other issues relating to the parties' original written agreement.[1]

While the case was pending in the trial court on remand, the Court of Appeals issued its decision in *Flynn.* In *Flynn,* the Court of Appeals held that "[b]ecause the SRCA does not create a new obligation or impose a new duty, and because it simply alters the remedy available to plaintiffs who have been denied their justly earned commissions, it is properly applied retroactively." *Id.* at 638.

_____

[1]Unpublished opinion per curiam, issued October 22, 1996 (Docket No. 169747).

When this case returned to the Court of Appeals a second time, the Court followed its decision in *Flynn* and held that the SRCA "shall be applied retroactively to this case."[2] Accordingly, the Court of Appeals remanded the case to the trial court to allow plaintiff to amend its complaint, and directed that the trial court "determine whether defendants intentionally failed to pay commissions due at the time of termination."[3] The Court also reversed the trial court's decision to enter a judgment of no cause of action on plaintiff's breach of contract claim, as well as its decision denying plaintiff's request for attorney fees as a sanction for defendants' late decision to admit the existence and enforceability of the original written agreement.

We granted defendants' application for leave to appeal, "limited to the issue whether MCL 600.2961; MSA 27A.2961 should be retroactively applied to this case." 462 Mich 919 (2000).

## II. Standard of Review

As a general matter, "decisions granting or denying

---

[2]While acknowledging its prior decision in this case holding that the SRCA should be applied prospectively only, the Court concluded that *Flynn* was an "intervening change in the law" allowing it to reach a different conclusion notwithstanding the law of the case doctrine.

[3]Unpublished opinion per curiam, issued May 14, 1999 (Docket No. 203326).

5

motions to amend pleadings . . . are within the sound discretion of the trial court and reversal is only appropriate when the trial court abuses that discretion." *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997). In this case, however, the propriety of plaintiff's request to amend its complaint turns on whether the SRCA should be applied retroactively. This is a question of statutory construction that we review de novo. *Donajkowski v Alpena Power Co*, 460 Mich 243, 248; 596 NW2d 574 (1999).

### III. Analysis

In determining whether a statute should be applied retroactively or prospectively only, "[t]he primary and overriding rule is that legislative intent governs. All other rules of construction and operation are subservient to this principle." *Franks v White Pine Copper Division*, 422 Mich 636, 670; 375 NW2d 715 (1985). Moreover, "statutes are presumed to operate prospectively unless the contrary intent is clearly manifested." *Id.* at 671; see also *Hughes v Judges' Retirement Bd*, 407 Mich 75, 85; 282 NW2d 160 (1979). This is especially true if retroactive application of a statute would impair vested rights, create a new obligation and impose a new duty, or attach a disability with respect to past transactions. See *Franks*, *supra* at 671-674.

We agree with defendants that there is nothing in the language of the SRCA suggesting a legislative intent that this statute be applied retroactively. To the contrary, there actually are two signals that exactly the opposite was intended. Most instructive is the fact that the Legislature included no express language regarding retroactivity. See, e.g., *Chesapeake & Ohio Co v Public Service Comm*, 382 Mich 8, 22-23; 167 NW2d 438 (1969) (Adams, J.). We note that the Legislature has shown on several occasions that it knows how to make clear its intention that a statute apply retroactively. See, e.g., MCL 141.1157; MSA 5.3188(257) ("This act shall be applied retroactively . . . "); MCL 324.21301a; MSA 13A.21301a ("The changes in liability that are provided for in the amendatory act that added this subsection shall be given retroactive application").

Further indicating that the Legislature intended prospective application of the SRCA is the fact that subsection 5 of the SRCA provides for liability if the principal "fails to comply with this section." Because the SRCA did not exist at the time that the instant dispute arose, it would have been impossible for defendants to "comply" with its provisions. Accordingly, this language supports a conclusion that the Legislature intended that the SRCA operate prospectively only.

7

Plaintiff relies on the so-called "exception" to the general rule of prospective application providing that "statutes which operate in furtherance of a remedy or mode of procedure and which neither create new rights nor destroy, enlarge, or diminish existing rights are generally held to operate retrospectively unless a contrary legislative intent is manifested." *Franks*, *supra* at 672; *Selk v Detroit Plastic Products*, 419 Mich 1, 10; 345 NW2d 184 (1984). Plaintiff argues that the SRCA is remedial because no new cause of action is created. Instead, according to plaintiffs, the act merely supplements and furthers remedies otherwise available. However, we have rejected the notion that a statute significantly affecting a party's substantive rights should be applied retroactively merely because it can also be characterized in a sense as "remedial." *Franks*, *supra* at 673-674. In that regard, we agree with Chief Justice Riley's plurality opinion in *White v General Motors Corp*, 431 Mich 387, 397; 429 NW2d 576 (1988), that the term "remedial" in this context should only be employed to describe legislation that does not affect substantive rights. Otherwise, "[t]he mere fact that a statute is characterized as 'remedial' . . . is of little value in statutory construction." *Id.*, quoting 3 Sands, Sutherland Statutory Construction (4th ed), § 60.02, p 60. Again, the question is one of legislative intent.

8

We find the United States Supreme Court's decision in *Landgraf v USI Film Products*, 511 US 244; 114 S Ct 1483; 128 L Ed 229 (1994), to be instructive on this point. In that case, the Court had to decide whether to apply retroactively the then newly enacted compensatory damages provision of the 1991 amendments to title VII. Although the Court recognized that the new provisions did not create a new cause of action per se because discriminatory conduct had previously been prohibited, the Court observed that the provisions would "attach an important new legal burden to that conduct." *Id.* at 283. Therefore, the Court concluded that the damages remedy at issue was "the kind of provision that does not apply to events antedating its enactment in the absence of clear congressional intent." *Id.*

Similarly, here, retroactive application of the SRCA would change significantly the substance of the parties' agreement and unsettle their expectations. Not only would the forty-five-day payment provision impose a new burden on defendants, but it is one that defendants can no longer meet because they already made the decision to dispute the commissions claimed by plaintiff before the statute was enacted. Thus, defendants never had the opportunity to avoid

the penalty authorized by the statute.[4]  Finally, as opposed to being merely "remedial" in nature, the SRCA clearly serves a punitive and deterrent purpose.  Thus, absent some clear manifestation, we simply cannot attribute to the Legislature an intent to give the SRCA retroactive effect.[5]

---

[4]We have no doubt that the SRCA authorizes a penalty. Damages awarded in a common-law breach of contract action are "expectancy" damages designed to make the plaintiff whole.  In Kewin v Massachusetts Mutual Life Ins Co, 409 Mich 401, 414; 295 NW2d 50 (1980), we explained the usual measure of damages in such an action:

> Under the rule of *Hadley v Baxendale*, 9 Exch 341; 156 Eng Rep 145 (1854), the damages recoverable for breach of contract are those that arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made.

Because the SRCA authorizes a measure of damages in addition to the "actual damages" incurred by a plaintiff, on the basis of an "intentional failure to pay commissions when due," MCL 600.2961(5)(b); MSA 27A.2961(5)(b), it is indisputably punitive, not compensatory, in that respect.

[5]*Guardian Depositors Corp of Detroit v Brown*, 290 Mich 433; 287 NW 798 (1939), provides an example of a case in which a statute altering the remedy for enforcement of a contract would properly be applied retroactively.

In *Guardian*, the Trevethans took out a mortgage on their property that the plaintiff subsequently acquired.  The defendants bought the Trevethans' home and expressly assumed the mortgage under a warranty deed.  When the defendants failed to make payments, the plaintiff brought suit under the then newly enacted third-party beneficiary statute, 1937 PA 296.  This Court held that the statute should be applied retroactively because it was merely remedial.  The Court emphasized that, even before the statute, the plaintiff "had a clear and direct right in equity to enforce a duty owed by defendants and created by their assumption agreement," and

(continued...)

10

In that regard, we agree with the *Landgraf* Court that a requirement that the Legislature make its intention clear "helps ensure that [the Legislature] itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness." *Landgraf*, *supra* at 268. This is especially true when a new statutory provision affects contractual rights, an area "in which predictability and stability are of prime importance." *Id*. at 271.[6]

As a final matter, plaintiff asserts two lower federal court decisions relying on Senate Bill Analysis, SB 717, May 21, 1992, to support the conclusion that the SRCA is compensatory rather than punitive in nature because it "merely designates another measure of damages for the same breach of contract action . . . ." *M & C Corp v Erwin Behr GmbH & Co*, 87 F 3d 844, 850 (CA 6, 1996); see also *Kenneth Henes Special Projects Procurement v Continental Biomass Ind, Inc*, 86 F Supp 2d 721 (ED Mich, 2000). We reject plaintiff's reliance on *M & C Corp* and *Henes* because neither is persuasive. First, as

<hr />

[5](...continued) that the statute merely allowed the defendants to enforce the same duty at law. *Id*. at 441-442. The only effect of the statute was to avoid a multiplicity of suits.

[6]As did the dissent in *Flynn*, *supra* at 640-641, defendants allude to potential constitutional "impairment of contract" concerns that could arise by virtue of a retroactive application of the SRCA. See Const 1963, art 1, § 10. Because we can discern no Legislative intent to apply the SRCA retroactively, we need not address that issue.

even plaintiff acknowledges, in Michigan, a legislative analysis is a feeble indicator of legislative intent and is therefore a generally unpersuasive tool of statutory construction.[7] Second, even if it were relevant to our analysis, nothing in the Senate bill analysis leading to the enactment of the SRCA contradicts our view that the act authorizes a penalty. Finally, we note that neither federal decision purported to address an issue concerning retroactivity.

IV. Conclusion

Retroactive application of the SRCA would substantially alter the nature of agreements concerning payment of sales commissions that were entered into before the act's effective

---

[7]As the Court of Appeals noted in *People v Tolbert*, 216 Mich App 353, 360, n 5; 549 NW2d 61 (1996):

> It has been observed in the federal context that resort to "legislative history" in the search for legislative intent is a perilous venture. *Marposs Corp v Troy*, 204 Mich App 156, 167-168, n 2; 514 NW2d 202 (1994) (Taylor, P.J., dissenting), quoting Address by Justice Antonin Scalia before the Attorney General's Conference on Economic Liberties (June 14, 1986). This enterprise is doubly fraught with danger in Michigan which, unlike Congress, has failed to create an authoritative legislative record. *Id*.

> The problem with relying on bill analyses is that they do not necessarily represent the views of even a single legislator. Rather, they are prepared by House and Senate staff. Indeed, the analyses themselves note that they do not constitute an official statement of legislative intent.

date.   Absent a clear legislative intent that the act be so applied, we hold that the SRCA must be given prospective effect only.   Accordingly, we overrule *Flynn*, reverse in part the Court of Appeals decision, and reemphasize the strong presumption against the retroactive application of statutes in the absence of a clear expression by the Legislature that the act be so applied.   The case is remanded for further proceedings on the remaining issues consistent with the direction given by the Court of Appeals.

CORRIGAN, C.J., and WEAVER, TAYLOR, and MARKMAN, JJ., concurred with YOUNG, J.

13

STATE OF MICHIGAN

SUPREME COURT


FRANK W. LYNCH & CO.,

    Plaintiff-Appellee,

v                                                                      No. 115324

FLEX TECHNOLOGIES, INC.,
and FLEX TECHNOLOGIES, LTD.,

    Defendants-Appellants,

and

ONTARIO, INC.,

    Defendant.

_____

KELLY, J. (*concurring*).

    I write separately to express my view that, in Michigan, under certain circumstances, a bill analysis could be a persuasive tool of statutory construction. Assume, for example, that the analysis explaining a bill's intent were consistent with other evidence showing the same intent. Then that could be, at least, as persuasive as the opinion of a sitting legislator about the bill's intent.

    CAVANAGH, J., concurred with KELLY, J.