# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-1518

_____

| | |
|---|---|
| Chem-Trend, Inc., a Michigan Corporation, | * <br> * <br> * |
| Plaintiff - Appellant, | * <br> * |
| v. | * <br> * |
| Newport Industries, Inc., a Missouri Corporation, | * <br> * <br> * |
| Defendant - Appellee, | * <br> * |
| Joseph Cahan, an individual; Douglas J. Edington, an individual, jointly and severally; W. N. Shaw Company, a Missouri Corporation; and David Murphy, | * <br> * <br> * <br> * <br> * <br> * |
| Defendants. | * |

_____

No. 00-1520

_____

| | |
|---|---|
| Newport Industries, Inc., a Missouri Corporation, | * <br> * <br> * |
| Counter Claimant - Appellant, | * <br> * <br> * |

Appeals from the United States District Court for the Eastern District of Missouri

[TO BE PUBLISHED]

v.                                   *
                                     *
Chem-Trend, Inc., a Michigan         *
Corporation,                         *
                                     *
            Counter Defendant -      *
            Appellee.                *

                    _____

            Submitted:  February 12, 2001

              Filed:  February 6, 2002
                    _____

Before LOKEN, HEANEY, and BYE, Circuit Judges.
                    _____

BYE, Circuit Judge.

        Chem-Trend, Inc., appeals a judgment awarding Newport Industries, Inc., contractual commission damages in the amount of $109,182.23, to which the district court[1] added a statutory penalty ($100,000) and attorney's fees ($4,863.50) pursuant to the Michigan Sales Representatives' Commissions Act (MSRCA), Mich. Comp. Laws § 600.2961. Newport cross-appeals, contending the district court abused its discretion in determining the amount of attorney's fees. We affirm.

## FACTUAL BACKGROUND

        This case involving Michigan law finds its way into our circuit via a business relationship between a Michigan corporation (Chem-Trend) and a Missouri

---

[1]The Honorable Frederick R. Buckles, United States Magistrate Judge for the Eastern District of Missouri, presiding in the district court pursuant to 28 U.S.C. § 636(c)(1).

corporation (Newport). Chem-Trend manufactures and sells a number of chemical products including mold release agents — products that allow molded rubber and plastic pieces to be pulled from the molds which formed them. Joseph Cahan worked for Chem-Trend between 1977 and 1994, selling mold release agents as well as other Chem-Trend products. In 1994, Chem-Trend asked its salespersons to resign and become independent sales representatives. Cahan complied and formed Newport, which continued selling Chem-Trend products pursuant to an independent sales agreement. The sales agreement required Newport to maximize Chem-Trend sales within Newport's appointed territory. While the agreement did not prevent Newport or Cahan from representing Chem-Trend competitors, it did contain a confidentiality provision under which all product information was "only to be used by the Representative in the performance of services under this Agreement."

Chem-Trend originally allowed Newport to act as a nonexclusive sales representative in four states (Missouri, Arkansas, Iowa and Kansas) and portions of three others (Illinois, Mississippi, and Tennessee). In September 1996, however, Chem-Trend essentially cut Newport's territory in half, removing all of Iowa, Kansas, and Tennessee, and all of Mississippi except for one customer. Shortly thereafter, Cahan incorporated the W.N. Shaw Company to compete with Chem-Trend.

Shaw hired Douglas Edington, a Chem-Trend laboratory technician, and David Murphy, who had been Newport's salesman in Iowa before Chem-Trend removed that state from Newport's territory. Within months of incorporation, and despite having only rudimentary equipment, no formal testing procedures, and no chemists on staff, Shaw began selling substantial amounts of several mold release agents that were essentially identical to Chem-Trend products. Shaw sold its mold release agents primarily to former Chem-Trend customers located outside of Newport's designated territory. At the same time, Newport continued selling Chem-Trend products within Newport's designated territory, sometimes doubling and tripling projected sales forecasts.

In March 1997, Chem-Trend discovered Cahan's competing activities and suspected foul play. On March 24, Chem-Trend terminated Newport's independent sales agreement. About one month later, after discovering the extent to which Cahan had misappropriated trade secrets, Chem-Trend informed Newport that commission payments due under the sales agreement would no longer be made.

Chem-Trend sued Newport, Cahan, Edington, Murphy, and Shaw in federal district court alleging misappropriation of trade secrets, breach of fiduciary duty, breach of contract, fraudulent concealment, civil conspiracy, and several other claims. Newport counterclaimed for its unpaid commissions, alleging Chem-Trend triggered the statutory penalties of the MSRCA by intentionally failing to pay its commissions.[2]

---

[2]The MSRCA provides, in pertinent part, that

All commissions that are due at the time of termination of a contract between a sales representative and principal shall be paid within 45 days after the date of termination. Commissions that become due after the termination date shall be paid within 45 days after the date on which the commission became due.

(5) A principal who fails to comply with this section is liable to the sales representative for both of the following:

(a) Actual damages caused by the failure to pay the commissions when due.

(b) If the principal is found to have *intentionally failed to pay* the commission when due, an amount equal to 2 times the amount of commissions due but not paid as required by this section or $100,000.00, whichever is less.

(6) If a sales representative brings a cause of action pursuant to this section, the court shall award to the prevailing party reasonable attorney fees and court costs.

The case proceeded to a jury trial in April 1999. Chem-Trend presented twenty separate claims — five each against Newport, Cahan, and Edington, four against Shaw, and one against Murphy. Newport presented its counterclaim for the unpaid commissions.

As to Newport, the jury found in Chem-Trend's favor on two of the five claims, for breach of fiduciary duty and fraudulent concealment. The jury rejected the three other claims against Newport, including the breach of contract claim, apparently concluding that Newport met its obligations under the independent sales agreement. The jury awarded Chem-Trend a total of $1,056,000 against all defendants, finding Newport responsible for 15% of those damages.

Despite Newport's breach of fiduciary duty and fraud, the jury found in Newport's favor on the counterclaim and awarded $109,182.23 in unpaid commissions. Because the jury also found Chem-Trend "intentionally failed to pay" Newport's commissions when due, the district court added a statutory penalty of $100,000 and attorney's fees pursuant to the MSRCA. The district court reduced Newport's requested fees because the counterclaim was only one of many claims in the case, and because one of Newport's attorneys, despite notice from the court, inadequately differentiated between the time spent prosecuting the counterclaim and the time spent defending against Chem-Trend's claims.

Chem-Trend challenges the counterclaim verdict on appeal, but failed to appeal from the adverse contract verdict. In its cross-appeal, Newport challenges the district court's reduction in the requested amount of fees.

---

Mich. Comp. Laws § 600.2961 (emphasis added).

## DISCUSSION

Chem-Trend first argues the award of commission damages must be reversed because the jury's verdict on the underlying breach of contract claim is unsupported by the evidence. Chem-Trend argues the evidence is insufficient to support the contract verdict because the jury, having found Newport breached a fiduciary duty and committed fraud, was obligated to find that Newport breached its contractual obligations. In effect, Chem-Trend posits the adverse contract verdict is inconsistent with the favorable fiduciary duty and fraud verdicts.

Newport responds that Chem-Trend cannot challenge the commission damages indirectly through a challenge to the contract verdict because Chem-Trend failed to appeal the adverse contract verdict. We agree. Cf. Artis v. Francis Howell N. Band Booster Ass'n, 161 F.3d 1178, 1184 (8th Cir. 1998) (holding an unappealed jury verdict on a claim mooted that part of the plaintiff's appeal demanding an entitlement to damages on that claim). In addition, to the extent Chem-Trend claims an inconsistency in the verdicts, Chem-Trend waived the challenge by failing to object before the district court discharged the jury. Williams v. KETV Television, Inc., 26 F.3d 1439, 1443 (8th Cir. 1994).

Chem-Trend also argues the district court erred in construing the MSRCA to allow damages in favor of a sales representative who breaches a fiduciary duty and defrauds its principal. Newport responds that Chem-Trend actually alleges an instructional error disguised as a claim of erroneous statutory construction. Chem-Trend agreed to instructions which advised the jury that a breach of contract by Newport negated the counterclaim, but which allowed the jury to consider the counterclaim even if Newport breached a fiduciary duty or committed fraud. We agree with Newport. Because Chem-Trend failed to object to the district court's instructions, and failed to request an instruction indicating that a breach a fiduciary duty or a finding of fraud negated the counterclaim, this claim is waived. Therefore,

our review of this issue is limited to the plain error standard of review.  See Fed. R. Civ. P. 51; Cross v. Cleaver, 142 F.3d 1059, 1068 (8th Cir. 1998).

Plain error review is "narrow and confined to the exceptional case where error has seriously affected the fairness, integrity, or public reputation of the judicial proceedings."  Des Moines Bd. of Water Works Trs. v. Alvord, 706 F.2d 820, 824 (8th Cir. 1983).  The verdict should be reversed "'only if the error prejudices the substantial rights of a party and would result in a miscarriage of justice if left uncorrected."  Rush v. Smith, 56 F.3d 918, 922 (8th Cir. 1995).

To determine whether the district court plainly erred in instructing the jury, we must first explore whether Chem-Trend deserved an instruction indicating that a sales representative cannot recover unpaid commissions under the MSRCA when the representative defrauds its principal, or breaches a fiduciary duty owed thereto.  The MSRCA itself provides scant guidance in determining whether a sales representative retains the benefit of the statutory remedy in those circumstances.[3]

Under Michigan common law, "[t]he general rule is that a broker forfeit[s] his right to compensation by misconduct, breach of duty, or wilful disregard, *in a material respect*, of an obligation imposed upon him by the law of agency."  Sweeney & Moore v. Chapman, 294 N.W. 711, 712 (Mich. 1940) (emphasis added).  Acts of fraud or breaches of fiduciary duty are not always material, however, so forfeiture of commissions is not always an appropriate remedy.  Muglia v. Kaumagraph Corp., 64 F.3d 663, 1995 WL 492933, at *6-7 (6th Cir. 1995) (unpublished table decision) (interpreting Michigan law and holding that a principal who failed to prove it suffered

---

[3]One federal court referred to the MSRCA as "one of the most haphazardly and inartfully drafted pieces of legislation that it has ever been called upon to review. There is no stated scope of the statute, nor any specific declaration of applicability or intent."  Kenneth Henes Special Projects Procurement v. Cont'l Biomass Indus., Inc., 86 F. Supp. 2d 721, 728-29 (E.D. Mich. 2000).

injury due to a sales representative's breach of fiduciary duty could not withhold commissions); <u>Kingsley Assoc., Inc. v. Del-Met, Inc.</u>, 918 F.2d 1277, 1285 (6th Cir. 1990) (applying Michigan law and holding that a sales representative who allegedly breached a fiduciary duty by representing a competing company did not forfeit commissions where the principal failed to show that dual representation caused damage).

Thus, Chem-Trend was probably entitled to an instruction indicating Newport forfeited commissions upon a *material* breach of fiduciary duty or act of fraud that caused Chem-Trend damage. But because Chem-Trend neglected to request such an instruction, we must decide whether this is the exceptional case requiring reversal under the plain error standard. Although we are troubled by the commission award, particularly the onerous and seemingly undeserved $100,000 statutory penalty required by the MSRCA, we have equal trouble concluding that plain error exists.

First, our comments regarding Chem-Trend's entitlement to the missing jury instruction are made hesitantly. We base our comments on Michigan common law, not the MSRCA. Because the MSRCA is not a model of clarity, we cannot tell for sure how extensively the Michigan legislature meant to modify the requirements of the common law with respect to forfeiture of commissions.[4] In a case addressing the MSRCA's retroactivity, the Michigan Court of Appeals indicated "an employer who was not liable under the common law is not liable under the [M]SRCA." <u>Flynn v. Flint Coatings, Inc.</u>, 584 N.W.2d 627, 629 (Mich. Ct. App. 1998). But <u>Flynn</u> has since been overruled, <u>Frank W. Lynch & Co. v. Flex Techs., Inc.</u>, 624 N.W.2d 180, 185 (Mich. 2001), so we have little guidance from the Michigan courts about the extent to which the MSRCA modifies the common law.

---

[4]The statute merely states "[t]his section does not affect the rights of a principal or sales representative that are otherwise provided by law." Mich. Comp. Laws § 600.2961(9).

Under Chem-Trend's view, the MSRCA provides no penalty for a principal who engages in self-help by intentionally withholding commissions in the first instance, as long as the principal justifies its actions by subsequently proving the sales representative's disloyalty. But Chem-Trend's view is not the only plausible reading of the statute. The MSRCA might be intended to require principals to pay earned commissions in the first instance, then sue to recover against a disloyal servant. Otherwise, principals could claim disloyalty as a justification for withholding commissions in every case, thereby placing the onus of proceeding to litigation upon sales representatives. Part of the purpose of the MSRCA may be to relieve sales representatives of the burden of initiating litigation to recover earned commissions, and place that burden squarely upon principals.

Second, at best, Chem-Trend may have deserved an instruction indicating Newport forfeited commissions upon a *material* breach of fiduciary duty or act of fraud that caused damage. See Muglia and Kingsley, supra. But Chem-Trend agreed to instructions which allowed the jury to find a breach of fiduciary duty or act of fraud *without a finding of materiality*. Newport suggests the jury based its fiduciary and fraud verdicts upon evidence indicating Newport reimbursed Edington for a trip to St. Louis to meet with Cahan about working for Shaw. Newport suggests the jury may have viewed that conduct as disloyal, or fraudulent, without necessarily viewing it as material to Newport's contractual right to commissions. We must agree. Under plain error review, we are obligated to view the evidence in a manner that allows us to uphold the verdict. Chem-Trend's failure to request pertinent instructions prevents us from discerning whether the jury's award of commissions under the MSRCA is consistent with its verdicts on the breach of fiduciary duty and fraud claims.

Under these circumstances, we cannot conclude Chem-Trend's substantial rights have been prejudiced. Even while Cahan was misappropriating trade secrets in his competing business, Newport continued to maximize Chem-Trend's sales within Newport's assigned territory, sometimes doubling and tripling projected sales

forecast. We can understand how the jury could believe Newport earned its unpaid commissions under the contract, even though Newport breached a fiduciary duty or committed fraud by assisting or hiding Cahan's conduct. In addition, the jury essentially made Chem-Trend whole by awarding damages for all of the defendants' wrongdoing. Michigan law seems to recognize forfeiture of commissions as a *quid pro quo* for the damage a principal suffers at the hands of a disloyal servant. See Muglia, 1995 WL 492933 at *6-7 (holding that forfeiture of commissions not warranted where principal was ultimately not damaged); Kingsley, 918 F.2d at 1285 (same). Chem-Trend was fully compensated by the jury's verdicts in its favor, and would receive a windfall if allowed to retain Newport's unpaid commissions.

At bottom, this case turns on a civil litigant's failure to request the right instructions and our consequent inability to determine the propriety of a jury's verdicts because of that failure. Although we are troubled by Newport receiving the onerous statutory penalty[5] provided by the MSRCA in addition to its unpaid commissions, we do not believe that fact alone makes this the exceptional case where error has so seriously affected the fairness, integrity, or public reputation of judicial proceedings that we must reverse.

We have no trouble dispensing with Newport's cross-appeal challenging the district court's reduction of its requested fees.

---

[5]Chem-Trend also argues the statutory penalty should not apply because it did not withhold commissions in bad faith. We disagree. The MSRCA's "intentionally failed to pay" provisions do not require a finding of bad faith. See M & C Corp. v. Erwin Behr GmbH & Co., 87 F.3d 844, 850 (6th Cir. 1996). Chem-Trend agreed to submit the issue of intent to the jury, and agreed to instructions that allowed the jury to consider the issue notwithstanding a breach of fiduciary duty or act of fraud by Newport. After the jury found Chem-Trend "intentionally failed to pay," the district court was obligated to award the statutory penalty under the MSRCA.

An award of fees is reviewed for abuse of discretion only. The trial court knows the case best. It knows what the lawyers have done, and how well they have done it. It knows what these efforts are worth. It knows how to balance portions of the case together to reach a just and reasonable award. We see no abuse of discretion here.

Young v. City of Little Rock, 249 F.3d 730, 737 (8th Cir. 2001).

For the reasons stated, we affirm the district court.

A true copy.

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.