FRASER TOWNSHIP v LINWOOD-BAY SPORTSMAN'S CLUB

Docket No. 258601. Submitted March 7, 2006, at Lansing. Decided March 16, 2006, at 9:05 a.m. Leave to appeal sought.

Fraser Township brought an action in the Bay Circuit Court against the Linwood-Bay Sportsman's Club, seeking to enjoin the defendant from constructing and operating an outdoor pistol or rifle range on its property. Maple Leaf Golf Course, Inc., which has a golf course next to the defendant's property, was allowed to intervene as a plaintiff to raise claims of nuisance and attractive nuisance. After a bench trial, the court, Lawrence M. Bielawski, J., permanently enjoined the defendant from building, continuing construction, or using its proposed outdoor pistol or rifle range. The defendant appealed, claiming that the sport shooting ranges act, MCL 691.1541 *et seq.*, preempts township regulation of shooting ranges and prohibits nuisance actions against shooting range operators.

The Court of Appeals *held*:

1. The circuit court did not err in determining that the sport shooting ranges act does not completely preempt the township from regulating, or prohibiting, the defendant's proposed new range and use. The act does not completely occupy the field of regulation because it expressly provides for local regulation of certain aspects of sport shooting ranges. The act does not free sport shooting range operators from local zoning controls regarding construction of new facilities. Rather, it provides that ranges may allow more use of facilities already in existence when the act was passed when the use supports more membership, participation, events, or activities.

2. The trial court did not err in determining that the plaintiff's proposed pistol or rifle range is not an existing structure or an expansion of membership, participation, events, or activities that the act allows regardless of compliance with local regulation.

Affirmed.

ZONING — TOWNSHIPS — SPORT SHOOTING RANGES ACT — PREEMPTION — NEW FACILITIES.

The sport shooting ranges act does not preempt township zoning

ordinances with respect to the construction of new facilities on sport shooting ranges (MCL 691.1542a).

*Seward, Tally & Piggott, P.C.* (by *Mark J. Brissette*), for Fraser Township.

*Beggs & Schisler, P.L.C.* (by *Paul F. Beggs*), for Maple Leaf Golf Course, Inc.

*Foster Zack & Lowe, P.C.* (by *J. Kevin Winters*), for Linwood-Bay Sportsman's Club.

Amicus Curiae:

*Burleson & O'Neill, PLLC* (by *Julie A. O'Neill*), for the Michigan United Conservation Clubs.

Before: SMOLENSKI, P.J., WHITBECK, C.J., and O'CONNELL, J.

PER CURIAM. In this action involving the scope of the sport shooting ranges act[1] (the Act), defendant Linwood-Bay Sportsman's Club (Linwood-Bay), owner of land used for a sport shooting range, appeals as of right a judgment permanently enjoining Linwood-Bay "from building, continuing construction and/or using its proposed outdoor pistol and/or rifle range," which the trial court entered following a bench trial. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff Fraser Township filed suit for an injunction to prevent Linwood-Bay from "operating an outdoor pistol or rifle range." In a motion filed simultaneously, the township alleged that Linwood-Bay was impermissibly "proceeding with plans to construct an outdoor

---

[1] MCL 691.1541 *et seq.*

pistol or rifle range on Defendant's property within Fraser Township." Linwood-Bay opposed the injunction, arguing that the Act authorized its activities "notwithstanding contrary zoning" and that its activities were neither in violation of the zoning ordinances nor inherently dangerous.

At the hearing on the preliminary injunction, the parties agreed to allow Maple Leaf Golf Course to intervene as a plaintiff and did not object to Michigan United Conservation Clubs (MUCC) filing a brief amicus curiae. The trial court granted the preliminary injunction, precluding any outdoor pistol or rifle shooting and any further construction on the outdoor rifle range. The order permitted "[o]utdoor archery, skeet shooting, and trap shooting . . . as they are performed without pistols or rifles." The order also permitted firing muzzle loading weapons, subject to later objections by either plaintiff.

Maple Leaf then filed its complaint, which included the following allegations:

> 6. Plaintiff has owned and operated [its course] for more than forty years at its present location. Many thousands of golfers utilize the golf course on an annual basis. At least three (3) of the holes are in harm's way of a stray shooting from the range.

> 7. In June, 2001, a patron of the course was struck by a stray bullet. Other golfers have complained from time to time of bullets grazing through the course. Most recently, in august, 2003, [sic] no less than four golfers have indicated that bullets have whizzed past them or they've been in earshot of a ricocheting bullet. It would appear that these shots are coming from the use or misuse of the proposed new outdoor range.

Maple Leaf also alleged that Linwood-Bay's range was both a nuisance and an attractive nuisance. After Linwood-Bay answered and counterclaimed against

Maple Leaf, the trial court conducted a one-day bench trial and took the case under advisement. After trial, Linwood-Bay moved to enter stipulated facts by proposing an order with stipulations that its operations complied with the "generally accepted operations practices" (GAOP) referred to in the Act, that its outdoor range complied with GAOP "as constructed to date," and that, if completed, "the outdoor range will be inspected by an NRA-RTTA [National Rifle Association Range Team Technical Advisor] to determine compliance with GAOP." The township filed an objection, but the proposed stipulations were eventually entered with the following handwritten stipulation added below the typed ones: "The Plaintiffs reserve any legal rights they may have to address future use and construction at Defendant's site."

When it issued its opinion, the trial court summarized both its factual findings from the trial and its conclusions of law, ruling "in favor of the plaintiffs and against the defendant," and granting a permanent injunction against the defendant's building, construction, or use of the proposed range. Linwood-Bay moved for reconsideration, but the trial court denied this motion. This appeal followed.

## II. PREEMPTION

### A. STANDARD OF REVIEW

At issue is the legal question whether the Act preempts all township regulation of sport shooting ranges or whether the Act merely bars nuisance actions based on noise and zoning regulations that are intended to stop sport shooting ranges from continuing activities that they were engaged in when the Act was passed.

"We will not disturb the trial court's findings of facts unless clearly erroneous."[2] "However, we review questions of law de novo."[3]

### B. *RAY TWP v B & BS GUN CLUB*

The Act has not been the subject of extensive litigation at the appellate level. Indeed, there is only one published opinion concerning the Act, *Ray Twp v B & BS Gun Club*.[4] In that case, this Court affirmed the trial court's holding that the Act did not violate the Title-Object Clause of the Michigan Constitution and was not unconstitutionally vague.[5] Thus, whether the Act prohibits all nuisance actions against sport shooting ranges, or only those based on noise complaints, and whether the Act exempts sport shooting ranges from all local zoning ordinances are issues of first impression.

### C. PRINCIPLES OF PREEMPTION

In Michigan, the following principles apply to the issue of preemption:

> A municipality may not enact an ordinance if (1) the ordinance directly conflicts with the state statutory scheme, or (2) the state statutory scheme preempts the ordinance by occupying the field of regulation that the municipality seeks to enter, to the exclusion of the ordinance, even where there is no direct conflict between the two schemes of regulation. Preemption may be established (1) where state law is expressly preemptive; (2) by examination of the legislative history; (3) by the pervasiveness of

---

[2] *Frericks v Highland Twp*, 228 Mich App 575, 583; 579 NW2d 441 (1998); MCR 2.613(C).

[3] *Frericks, supra* at 583.

[4] *Ray Twp v B & BS Gun Club*, 226 Mich App 724; 575 NW2d 63 (1997).

[5] *Id.* at 728-733.

the state regulatory scheme, although this factor alone is not generally sufficient to infer preemption; or (4) where the nature of the subject matter regulated demands exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest.[6]

Here, the Act is not expressly preemptive of all local regulation. To the contrary, the Act expressly provides for local regulation of certain aspects of sport shooting ranges "[e]xcept as otherwise provided in this act."[7] Thus, the Act is not one that completely occupies the field of regulation, thereby excluding regulation by local governments. Rather, the Act leaves local government regulation of sport shooting ranges intact, except where such regulation is specifically limited by another section of the Act.

Given the plain language of the Act, we cannot agree with Linwood-Bay's arguments for complete preemption. Linwood-Bay and the MUCC rely almost entirely on the Act's legislative history to argue that, despite the language of the Act, the Legislature intended to occupy the field of sport shooting regulation entirely and also to prohibit any nuisance action of any kind against range operators. But, given the language of the Act, the legislative history cited is neither authoritative nor convincing.

As the Court of Appeals noted in *People v Tolbert*, 216 Mich App 353, 360, n 5; 549 NW2d 61 (1996):

"It has been observed in the federal context that resort to 'legislative history' in the search for legislative intent is a perilous venture. *Marposs Corp v Troy*, 204 Mich App 156, 167-168, n 2; 514 NW2d 202 (1994)[8] (TAYLOR, P.J.,

---

[6] *Frericks*, *supra* at 585-586 (citations omitted).

[7] MCL 691.1543.

[8] Overruled on other grounds by *Bendix Safety Restraints Group, Allied Signal, Inc v Troy (Amended Opinion)*, 215 Mich App 289 (1996).

dissenting), quoting Address by Justice Antonin Scalia before the Attorney General's Conference on Economic Liberties (June 14, 1986). This enterprise is doubly fraught with danger in Michigan which, unlike Congress, has failed to create an authoritative legislative record. *Id.*"

The problem with relying on bill analyses is that they do not necessarily represent the views of even a single legislator. Rather, they are prepared by House and Senate staff. Indeed, the analyses themselves note that they do not constitute an official statement of legislative intent.[9]

The state's regulatory scheme is not especially pervasive either. The Act has two main components: protection from nuisance actions and regulation related to noise[10] and a provision limiting local government regulation of existing sport shooting ranges.[11] Even if one reads the protection from noise restrictions expansively, that section does nothing to establish a pervasive regulatory scheme for range operations. Rather, it provides only protection from noise restrictions.

Further, neither the "state's purpose or interest" nor the "nature of the subject matter regulated" requires that the state be the exclusive regulator over sport shooting ranges. A sport shooting range is a particular land use that is subject to extensive control by townships under the Township Zoning Act.[12] Linwood-Bay argues that part of the Act preempts the township zoning ordinance entirely because it authorizes shooting range operators to

[d]o anything authorized under generally accepted operation practices, including, but not limited to:

---

[9] *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 587 n 7; 624 NW2d 180 (2001).

[10] MCL 691.1542(1) and (2).

[11] MCL 691.1542a.

[12] MCL 125.271 *et seq.*

(i) Expand or increase its membership or opportunities for public participation.

(ii) Expand or increase events and activities.[13]

However, statutes must be read as a whole:

[T]o read the law as a whole, it must, in fact, be read as a whole. The interpretative process does not . . . remove words and provisions from their context, infuse these words and provisions with meanings that are independent of such context, and then reimport these context-free meanings back into the law. The law is not properly read as a whole when its words and provisions are isolated and given meanings that are independent of the rest of its provisions.[14]

Reading § 2a of the Act in its entirety makes clear that the Legislature addressed the construction of facilities in §§ 2a(2)(a) and (b), and activities and uses in § 2a(2)(c):

(2) A sport shooting range that is in existence as of the effective date of this section and operates in compliance with generally accepted operation practices, even if not in compliance with an ordinance of a local unit of government, shall be permitted to do all of the following within its preexisting geographic boundaries if in compliance with generally accepted operation practices:

(a) Repair, remodel, or reinforce any conforming or nonconforming building or structure as may be necessary in the interest of public safety or to secure the continued use of the building or structure.

(b) Reconstruct, repair, restore, or resume the use of a nonconforming building damaged by fire, collapse, explosion, act of god, or act of war occurring after the effective date of this section. The reconstruction, repair, or restora-

---

[13] MCL 691.1542a(2)(c).

[14] *Lansing Mayor v Pub Service Comm*, 470 Mich 154, 168; 680 NW2d 840 (2004).

tion shall be completed within 1 year following the date of the damage or settlement of any property damage claim. If reconstruction, repair, or restoration is not completed within 1 year, continuation of the nonconforming use may be terminated in the discretion of the local unit of government.

(c) Do anything authorized under generally accepted operation practices, including, but not limited to:

(i) Expand or increase its membership or opportunities for public participation.

(ii) Expand or increase events and activities.[15]

Therefore, despite the broad language of the introductory phrase in § 2a(2)(c), the Act does not free sport shooting range operators from local zoning controls regarding construction of new facilities. Rather, it provides that ranges may allow more *use* of existing facilities to support more membership, participation, events, or activities. Linwood-Bay's theory is that this part of the Act enables it to ignore any local zoning while building entirely new structures that would be nonconforming from the outset. This is a strained reading of the Act that focuses on only part of the statute and ignores the immediately preceding subsections concerning maintenance or repair of *existing* facilities. Applying here the doctrine of *expressio unius est exclusio alterius*, "the expression of one thing suggests the exclusion of all others,"[16] suggests that the language in § 2a(2)(c) on which Linwood-Bay relies does not apply to construction or reconstruction of facilities at all, but applies only to the intensity with which existing facilities are used.

---

[15] MCL 691.1542a.

[16] *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 712; 664 NW2d 193 (2003).

Therefore, we conclude that the Act does not completely preempt the township from regulating and, in this case, prohibiting Linwood-Bay's proposed new range and use.

### III. EXISTING STRUCTURE VERSUS NEW RANGE

#### A. STANDARD OF REVIEW

"We will not disturb the trial court's findings of facts unless clearly erroneous."[17] "However, we review questions of law de novo."[18]

#### B. THE TRIAL COURT'S OPINION

The trial court found that "the proposed outdoor range is *NOT* a building or structure that is already in existence" and concluded that, therefore, "construction of the new range is not permitted under subsection 2a(2)(a) or (b) of the Act and defendant can not, therefore, proceed with same unless and until it obtains a variance from plaintiff township." The trial court stated in its opinion that the testimony was that the outdoor pistol range being built on the site was a both a new activity and a new structure:

> More specifically, according to defendant, the old 300 yard range has been abandoned for 20 years and is unsafe. Furthermore, and also according to defendant, the proposed range is not even located on the site of the former outdoor range; rather, the proposed range is located on a new and/or formerly unused portion of defendant's property. As such, the proposed range is an entirely new structure and/or facility. It is therefore clear that defendant is not "repairing, remodeling, reinforcing, reconstructing, restoring[,] or resuming the use of" an existing outdoor range.

---

[17] *Frericks, supra* at 583; MCR 2.613(C).

[18] *Frericks, supra* at 583.

### C. THE UNDERLYING TESTIMONY

On direct examination, defense counsel asked Alan Herman, Linwood-Bay's president, "Why did you—when I say you, the club—entertain the idea of—of building a new facility?" Herman responded as follows:

> A. Because the existing r—range that's out there was tried to be used here a few years ago and it had been let go a little bit, overgrown, and when you were back there in the woods, mosquitoes and stuff were just wild. So—and the backstop was, how do I say this, right at the very corner of the property line between the golf course and us, I mean, right on it. And we felt that by moving it to a central location, we could get farther away for noise, you know, move the brush back, everything.
>
> This would give us access to that and also and because of puttin' [sic] the wings around the new—new earth berm, it would, you know, protect us from wind and everything else in there much better than what the existing one is that's out there. That and the old stands and everything that were in there for what they used to raise the targets and hang their targets on had all rusted and dilapidated and gone down in and, you know, guys would just wanna [sic] take and—as was stated before—[interruption omitted]—stick a stick in the ground—[interruption omitted]—and put somethin' [sic] on it to shoot at out there and we didn't wanna [sic] do that. [Interruption omitted.] That was—we didn't felt [sic] that was good.
>
> Q. So, rather than put money in rehabilitating—
>
> A. That range be—and because it was so much closer to the—to the golf course property, we wanted to move it to the center of our property [interruption omitted] in order to make it 306 feet [interruption omitted] as much as we could.
>
> Q. Sure. I—if you will—the club is allowed to complete the range, will that take the place of a couple of other ranges?

*A.* Yes. That will be—the other ones will be completely abandoned. We'd put a sign on them that they are no longer active and not to be used for any type of firearm usage.

On cross-examination, Herman testified that Linwood-Bay had not offered outdoor pistol shooting on its property in "many, many years" and that it had been abandoned because the outdoor pistol range was overgrown with brush because Linwood-Bay could not find volunteers to keep the range maintained. Herman testified that a member of Linwood-Bay's club has a lifetime lease on separate property that Linwood-Bay uses for a pistol and rifle range near Munger in Bay County. Herman testified that, once the elderly member died, Linwood-Bay would not be able to lease the land near Munger for a shooting range and that was why Linwood-Bay decided "we gotta start doin' somethin' [sic] because we wanted to continue to do pistol, rifle, mostly pistol, that's our biggest, how do I say, income —one of our biggest income [producers] next to shotgun. And that range that we had there at the club was not going to suffice." Herman testified that Linwood-Bay had leased the Munger property since 1976.

On the basis of Herman's testimony, we conclude that the trial court did not clearly err in finding that the range subject to the injunction was a new facility that was not in existence when the Act was passed. And, as discussed above, the trial court did not err in concluding that the Act "does NOT mean that a sport shooting range may build an *entirely new* structure, building and/or facility on its property," even if defendant claimed that it needed the new range to "expand and/or increase membership" or "events and activities."

Because we have affirmed on the first two issues, we need not reach the nuisance issue.

We affirm.