*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEIDRE GOLDSMITH and THERAPEUTICS LLC,

Plaintiffs/Counterdefendants-Appellees,

v

FAITH HOPE & LOVE OUTREACH CENTER INC. and DJUANA COATS,

Defendants/Counterplaintiffs-Appellants.

UNPUBLISHED
May 19, 2026
3:07 PM

No. 371415
Wayne Circuit Court
LC No. 19-012294-CB

Before: TREBILCOCK, P.J., and CAMERON and LIEVENSE, JJ.

PER CURIAM.

Defendants/counterplaintiffs, Faith Hope & Love Outreach Center Inc. (Outreach) and Djuana Coats, appeal as of right the trial court's judgment awarding $693,653.50, plus statutory interest, to plaintiffs/counterdefendants, Therapeutics LLC (Therapeutics) and Deidre Goldsmith. Defendants also challenge the trial court's prior order granting plaintiffs' motion for partial summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) regarding their claim of identity theft. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the award of federal grant funds from the Substance Abuse and Mental Health Services Administration (SAMHSA), an agency of the United States Department of Health and Human Services. Deidre is a certified registered nurse anesthetist who founded Therapeutics, which she owns in partnership with her husband, Dwayne Goldsmith. Therapeutics offers substance abuse and medical assisted treatment (MAT) services to individuals with opioid use disorder. Deidre became interested in applying for a federal grant program offered by SAMHSA, which awarded funds to applicants who sought to increase participation in, and access to, MAT services in diverse populations. Because Therapeutics is a for-profit MAT services provider, it had to partner with a 501(c)(3) tax-exempt nonprofit organization to be eligible for the

-1-

federal grant. Deidre chose to partner with Outreach with the understanding that Therapeutics would provide MAT services to those with opioid use disorder, and Outreach would provide recovery support services.

The Goldsmiths provided Coats, the director of Outreach, with the necessary documentation and credentials, and Coats submitted the grant application to SAMHSA.[1] Coats identified herself in the grant application as the business official and included her contact information. She named Deidre as the project director, and identified Therapeutics, including its address, in the same section. But Coats used her own e-mail address and telephone number in the section designated for Deidre's information. Relevant to this appeal, the application also included a budget that provided an annual salary of $120,000 for Dierdre for the grant project's three-year period.

SAMHSA approved the grant application. The award notice approved the budget submitted with the application but requested a revised budget narrative. Deidre, however, did not receive the initial notice of award from SAMHSA, nor did Coats inform her of the grant award or request for a revised budget; in fact, Deirdre only discovered the award after independently searching SAMHSA's website. Later, the parties' relationship deteriorated because of disagreements about the scope of the project and how to allocate the funds. After several unsuccessful attempts to obtain the award notice from Coats and reach an agreement regarding the budget, Deidre e-mailed a SAMHSA employee explaining that she felt obligated to withdraw from the project. She also claimed that Coats falsified the application and wanted to pursue unapproved activities using grant funds.

However, after Coats reached out to plaintiffs to confirm whether they wanted to continue working together, the parties met to discuss the revised budget and Outreach's desire to change the scope of the project. Although Deidre was willing to move forward with Coats's "new budget," she was unwilling to change the scope of the project. At some point, Coats submitted a revised budget to SAMHSA, again using Deidre's name and credentials. The revised budget reduced the funds for Therapeutics and allocated more funds to Outreach against Diedre's wishes. In response, SAMHSA issued a second award notice reflecting the change. Despite Diedre's interest in remaining on the project, Coats later informed Deidre and SAMHSA that Deidre would no longer serve as project director, replacing Deidre and Therapeutics with another MAT services provider. As a result, SAMHSA issued a third award naming a different program director, while Coats remained named as the business official. Therapeutics never received any of the funds from the grant and never provided MAT services in relation to the grant. Outreach received the full amount of funds, in partnership with the new MAT services provider.

Plaintiffs filed a complaint against Outreach, alleging identity theft under the Identity Theft Protection Act, MCL 445.61 *et seq*., forfeiture of property under MCL 445.79, fraud, promissory estoppel, unjust enrichment/implied-in-law contract, and breach of contract/third-party beneficiary. Defendants filed counterclaims against plaintiffs, alleging claims of defamation and intentional infliction of emotional distress. Plaintiffs moved for partial summary disposition under

---

[1] Because of disagreements regarding the scope and location of the project, Coats submitted two separate grant applications to SAMHSA; only one was approved.

MCR 2.116(C)(8) (failure to state a claim) and (C)(10) of their identity-theft claim, arguing that Coats used Deidre's name but her own contact information to procure the grant, in violation of MCL 445.65(1)(a) and (1)(b). The trial court granted plaintiffs' motion under MCR 2.116(C)(10), finding that there was no genuine issue of material fact that defendants violated MCL 445.65(1)(b) by using Deidre's information without her consent to obtain the grant while also depriving her of "any benefit." It later granted plaintiffs' subsequent motion for summary disposition of defendants' counterclaims.

Plaintiffs requested damages for Deidre's loss of her salary under the grant, as well as lost wages, business damages for Therapeutics, forfeiture of assets obtained by defendants under the grant, attorney fees, and case-evaluation sanctions. The trial court appointed a special master to determine damages and make a recommendation to the court. After holding an evidentiary hearing, the special master recommended that the trial court enter a judgment awarding $693,653.50 to plaintiffs. He rejected plaintiffs' request for forfeiture damages but awarded expectancy damages including: (1) $360,000 for Deidre's lost project-director salary; (2) $253,613 for Therapeutics's lost profits; and (3) $16,000 for a lease that plaintiffs obtained in anticipation of expanding their MAT services under the grant. The special master also awarded the parties' stipulated $64,040.50 in attorney fees to plaintiffs as case-evaluation sanctions and noted that plaintiffs were entitled to additional statutory interest. The trial court adopted the special master's recommendations and entered a judgment jointly and severally against defendants for $693,653.50, including $64,040.50 in case-evaluation sanctions, and statutory interest of $73,644. This appeal followed.

## II. SUMMARY DISPOSITION

Defendants contend that the trial court erred by granting plaintiffs' motion for partial summary disposition, arguing that their conduct did not constitute identity theft under MCL 445.65(1). We disagree.

## A. STANDARDS OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim." *Id*. (Emphasis omitted). "In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The motion may only be granted if there is no genuine issue of material fact. *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

"Statutory interpretation is a question of law, which this Court also reviews de novo." *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 493; 791 NW2d 853 (2010).

When interpreting the meaning of a statute, our primary goal is to discern the intent of the Legislature by first examining the plain language of the statute. Statutory

provisions must be read in the context of the entire act, giving every word its plain and ordinary meaning. When the language is clear and unambiguous, we will apply the statute as written and judicial construction is not permitted. [*Driver v Naini*, 490 Mich 239, 246-247; 802 NW2d 311 (2011) (citations omitted).]

## B. ANALYSIS

The Identity Theft Protection Act prohibits the unauthorized use of personal identifying information to obtain goods, services, or credit. Specifically, MCL 445.65 provides:

(1) A person shall not do any of the following:

(a) With intent to defraud or violate the law, use or attempt to use the personal identifying information of another person to do either of the following:

(*i*) Obtain credit, goods, services, money, property, a vital record, a confidential telephone record, medical records or information, or employment.

* * *

(b) By concealing, withholding, or misrepresenting the person's identity, use or attempt to use the personal identifying information of another person to do either of the following:

(*i*) Obtain credit, goods, services, money, property, a vital record, a confidential telephone record, medical records or information, or employment. [MCL 445.65(1)(a)(*i*) and (1)(b)(*i*).]

"Personal identifying information" includes "a name, number, or other information that is used for the purpose of identifying a specific person . . . ." MCL 445.63(q).

Defendants argue that the trial court erroneously found that Coats violated MCL 445.65(1)(b).[2] The record shows that Coats violated MCL 445.65(1)(b) when she, instead of using Deidre's e-mail address and telephone number on the checklist form, used her own identifying information. The purpose of including the contact information was to allow SAMHSA to provide an award notice to each individual identified in the application. By withholding and misrepresenting Deidre's e-mail address and telephone number, Coats prevented SAMHSA from contacting Deidre regarding the award notices, while retaining the benefits of using Deidre's name and credentials to secure the grant. Coats admitted that she did this because she wanted to be the only person to receive notifications regarding the application. Coats also admitted that she "never

---

[2] The bulk of defendants' argument on appeal concerns whether Coats violated MCL 445.65(1)(a) by challenging whether there was sufficient evidence of intent. But it was Coats's violation of MCL 445.65(1)(b) that served as the sole basis for the trial court's grant of summary disposition. Unlike MCL 445.65(1)(a), MCL 445.65(1)(b) does not require a showing of intent to defraud or violate the law. Thus, we need not address defendants' MCL 445.65(1)(a) and intent arguments.

intended" to show the award notice to plaintiffs. Moreover, Coats unilaterally decreased the funds allocated to Therapeutics in the budget without approval from Diedre, and ultimately removed plaintiffs from the grant project entirely. Through these actions, Coats was able to commandeer the grant funds she was only able to obtain, in part, due to Diedre's credentials. Therapeutics never received any funds from the grant, while Outreach carried out the grant work with a different partner and received the full grant award. In sum, the record demonstrates that Coats obtained money—the grant—by misrepresenting and misusing Diedre's contact information in a federal grant application. Thus, the trial court did not err by granting partial summary disposition to plaintiffs regarding their identity-theft claim.[3]

## III. DAMAGES

Defendants also argue that the trial court erroneously awarded plaintiffs damages for Deidre's project-director salary and the amount Therapeutics deposited on a lease for a new facility.[4] We disagree.

## A. STANDARDS OF REVIEW

We review the trial court's factual findings for clear error. *Zoran v Cottrellville Twp*, 322 Mich App 470, 475; 913 NW2d 359 (2017). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake was made." *Id*. (citation and quotation marks omitted).

## B. ANALYSIS

The remedy for a party's fraudulent conduct is compensatory damages. See *Wright v Genesee Co*, 504 Mich 410, 419; 934 NW2d 805 (2019). "That is, the defendant compensates the injured party for the injury caused by the defendant's wrongful conduct." *Id*. "[T]he purpose of

---

[3] Defendants unpersuasively argue that Coats's conduct did not violate MCL 445.65(1)(b) because (1) she accurately listed Diedre's name and title on the application, but used her own contact information because "she simply wanted to maintain control of communications from [SAMHSA], as awardee[;]" (2) Diedre consented to the use of her name and credentials to procure the grant; (3) plaintiffs did not get any of the grant funds because they withdrew; and (4) Diedre's claim was premised on the fact that Coats put false information in the application to keep SAMHSA from contacting her, which, in and of itself, is not a violation of the Act. But none of these arguments undermine the trial court's finding that Coats misrepresented Diedre's information on an application to obtain grant funds, which violates the plain language of MCL 445.65(1)(b).

[4] We note that, on appeal, defendants also claim that the trial court erroneously awarded plaintiffs business damages for the salaries paid to new employees in anticipation of the grant. But the trial court expressly declined to award any such damages; it only awarded business damages for lost revenue. Thus, defendants' argument in this respect lacks merit.

compensatory damages . . . is to make the plaintiff whole . . . ." *Unibar Maintenance Servs, Inc v Saigh*, 283 Mich App 609, 631; 769 NW2d 911 (2009).[5]

Defendants first claim that the trial court erred by adopting the special master's recommendation to award Deidre $360,000—the amount she would have earned over the three-year project—because she withdrew from the project and did not provide MAT services under the grant. However, the record supports the trial court's finding that Deidre only withdrew as a result of Coats's conduct. In an e-mail to SAMHSA, Deidre indicated that she wished to withdraw from the project because Coats modified the original budget in a manner that was "unethical, unnecessary, and/or contrary to the spirit of the MAT Expansion grant[.]" Despite several attempts by the Goldsmiths to persuade Coats to conform with the original budget and scope of the project, Coats repeatedly declined to honor to their requests. She even submitted a budget reducing the funds allotted to Therapeutics using Deidre's name and credentials, despite Deidre's opposition to Coats's unilateral modifications. Coats even went so far as to inform SAMHSA that Deidre was no longer the project director despite Deidre's ongoing requests for Coats to reinstate the original budget. Because Deidre would have received $360,000 absent Coats's conduct, we discern no error warranting reversal.

Defendants further assert that plaintiffs were not entitled to damages because the original budget submitted with the application was not approved by SAMHSA. Although Coats testified that SAMHSA requested the "entire budget" be revised in the initial notice of award, she also admitted that SAMHSA did not specify *why* the budget was deficient or rejected. Dwayne, on the other hand, testified that the initial notice of award approved the budget submitted with the grant application but requested revisions and line-item adjustments that were necessary for SAMHSA's "coding" of the approved budget. These revisions did not change any of the costs listed in the approved budget or the amount awarded. The special master did not believe Coats testified credibly regarding whether SAMHSA "compelled" her to "alter the terms of the original grant," and the trial court found no reason to conclude otherwise. We "defer to the trial court's credibility

---

[5] MCL 445.65 is a criminal statute that contemplates civil actions arising from identity theft. See MCL 445.65(2). But the statute does not contemplate how damages are to be assessed in a civil action. Here, the trial court awarded plaintiffs expectancy damages, but "expectancy damages" were not appropriate because it addresses breaches of contract, and there was no contract between the parties. See *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 586 n 4; 624 NW2d 180 (2001) ("Damages awarded in a common-law breach of contract action are 'expectancy' damages designed to make the plaintiff whole."). Rather, the elements underlying identity theft are similar to those for a tort claim of fraud. See *Titan Ins Co v Hyten*, 491 Mich 547, 571-572; 817 NW2d 562 (2012) (identifying the elements of fraud as: (1) a party makes a material misrepresentation; (2) the misrepresentation was false; (3) the party knew it was false, or made it recklessly, without any knowledge of its truth; (4) the party intended for the other party to act on that misrepresentation; (5) the other party, in fact, acted in reliance on it; and (6) the other party suffered injury as a result). Accordingly, the trial court incorrectly labeled the damages in this case as "expectancy damages," as the correct term for these damages is compensatory damages. Nevertheless, as explained below, the actual amount of damages the trial court awarded were proper to compensate plaintiffs for their injuries resulting from defendants' fraudulent actions.

determinations given its superior position to make these judgments." *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011).

Defendants also contend that the trial court erred by adopting the special master's recommendation to award plaintiffs $16,000 for the amount they paid for a deposit on a new facility in Ann Arbor in anticipation of the grant being awarded. They claim that plaintiffs would have leased the facility regardless of whether they received the grant money. The record belies defendants' claims. Dwayne testified that Therapeutics previously looked into securing the facility in Ann Arbor because its location was ideal for providing services to underserved patients. But he also stated that "[i]f the grant wasn't in play," Therapeutics might have leased a facility elsewhere, such as Pontiac. Accordingly, the special master found that plaintiffs "entered into this lease to advance their grant proposal's prospect for approval." The trial court adopted this award, and, again, we defer to the special master's and trial court's credibility findings. See *id*. Because the record supports the trial court's compensatory damages awards, there is no error warranting reversal.

Affirmed.

/s/ Christopher M. Trebilcock
/s/ Thomas C. Cameron
/s/ Andrew J. Lievense