# STATE OF MICHIGAN

# COURT OF APPEALS

SEFIKA ADEMI,

　　　　　Plaintiff-Appellant,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and AMERISURE
INSURANCE COMPANY,

　　　　　Defendants-Appellees,

and

LANCER INSURANCE COMPANY,

　　　　　Defendant.

UNPUBLISHED
June 25, 2015

No.　319934
Kent Circuit Court
LC No.　12-002714-NF

Before:　BECKERING, P.J., and MARKEY and SHAPIRO, JJ.

PER CURIAM.

In this no-fault insurance action involving survivor's loss benefits, plaintiff, Sefika Ademi, appeals as of right the order granting defendants[1] State Farm Mutual Automobile Insurance Company and Amerisure Insurance Company's motion for involuntary dismissal on the issue of whether plaintiff was entitled to statutory penalty interest and attorney-fees under the no-fault act.　We affirm.

## I.　PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from the death of plaintiff's husband, Fadil Ademi, in a motor vehicle accident that occurred on April 9, 2011 in Texas.　Fadil, a commercial truck driver, was driving his 2007 Volvo semi-truck at the time of the accident.　Fadil purchased the truck under an installment contract and leased the truck to Real-Trans, Inc., a company with which Fadil had signed an agreement for trucking services.　Defendant Amerisure insured Real-Trans.　Defendant

---

[1] Plaintiff stipulated to dismiss her claims against defendant Lancer.　Thus, Lancer is not designated as an appellee.

-1-

Lancer issued Fadil an insurance policy that was referred to as a "bob-tail policy," which covered certain losses on Fadil's truck when it was being used for non-business purposes. Defendant State Farm insured plaintiff's automobile, a 2000 Pontiac Montana minivan. Fadil was listed on the policy as a driver of the minivan but was not a named insured under the policy.

The record reveals that plaintiff submitted claims for benefits with State Farm and Lancer in April 2011 and January 2012, respectively. On March 21, 2012, plaintiff filed a complaint against Amerisure,[2] State Farm, and Lancer, seeking personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.*, for funeral and burial expenses and survivor's loss benefits. Plaintiff alleged that each of the defendants unreasonably refused to pay the benefits, and therefore, she was entitled to attorney fees and penalty interest under the no-fault act.

After filing her complaint, plaintiff provided defendants with various documents regarding Fadil's income, including income tax returns for his trucking operation from 2009 and 2010, one of which showed an overall net loss of nearly $3,000. In July 2012, plaintiff submitted to defendants documents that the parties refer to as "paystubs" or "settlement sheets"; these documents purport to detail Fadil's income from Real Trans. As will be discussed in more detail *infra*, these reports are largely incomprehensible. In September 2012, plaintiff provided defendants with a report prepared by a certified public accounting firm (CPA report) in which the accounting firm purported to calculate Fadil's wage loss for three years after his death at $111,346. The report listed 17 different assumptions upon which the author of the report relied in making the determination. One involved an assumption about equipment rental fees as an expense, but the supporting documentation provided to the accounting firm failed to explain these fees. Another assumption noted that there were costs "missing" from the statement of detailed expenses for the 2010 tax year, and supposed, with no support, that the expenses may have been included elsewhere in the 2010 tax documents. Finally, another assumption noted that certain information was missing with respect to expenses relating to a $10,000 loan payable to Real-Trans. The report expressly stated that plaintiff's counsel would have to secure more information about the loan and would need to make adjustments to the figure provided accordingly.

On March 12, 2013, plaintiff moved the trial court for summary disposition under MCR 2.116(C)(10). Defendants argued that plaintiff failed to provide reasonable proof of loss or amount of loss; they also argued that each of the other defendants had priority for coverage of any benefits that might be owed. In addition, Amerisure argued that it was not liable for funeral or burial costs because funeral benefits were not PIP benefits under MCL 500.3107 at the time of Fadil's death in 2011. Although MCL 500.3107 was amended effective January 2, 2013, Amerisure argued that the prior version of the statute controlled in this case.

The trial court found that Amerisure and Lancer were liable to pay plaintiff's PIP benefits and that they shared priority status for the payment of those benefits. It denied plaintiff's request for penalty interest and attorney fees, finding that there were insufficient facts to determine if

---

[2] It appears from the record that plaintiff had not previously filed a claim for benefits with Amerisure.

-2-

and/or when plaintiff provided reasonable proof of loss. The trial court denied the motion for summary disposition for statutory interest and attorney fees as to all defendants—including State Farm.[3]

In September 2013, plaintiff entered into a settlement agreement with Lancer and Amerisure for PIP benefits; Lancer and Amerisure each paid half of the amount to plaintiff. On September 27, 2013, plaintiff moved the trial court once again for summary disposition on the issue of no-fault penalty interest and attorney fees. She argued that there was no issue of material fact that Amerisure or Lancer or both owed plaintiff attorney fees and penalty interest, and that State Farm owed her attorney fees. She contended that each defendants' failure to pay benefits was a result of their priority dispute with each other, and not a result of her failure to provide reasonable proof of loss and amount of loss. Plaintiff believed that the tax returns she submitted sufficed for proof of loss, as did the CPA report.

In response, defendants argued that any delay in paying benefits was not the result of a priority dispute, but instead, was caused by plaintiff's failure to submit reasonable proof of loss and amount of loss. Concerning replacement services, defendants argued that plaintiff failed to provide any proof that she ever incurred costs as a result of replacement services. In addition, they argued that the CPA report contained numerous assumptions and inaccuracies that prevented it from sufficing as reasonable proof of loss and amount of loss. For instance, the report failed to account for Fadil's tax rate, which was necessary to calculate survivor's loss benefits. In addition, defendants noted that the original report took workers' compensation insurance into consideration as a cost, while an updated CPA report, prepared in July 2013, did not account for workers' compensation insurance as an expense. Thus, defendants questioned the accuracy and validity of the reports. Amerisure, in responding to plaintiff's motion for summary disposition, also noted that it sent plaintiff requests for interrogatories in June 2012 regarding workers' compensation and benefits from secondary sources—which would be used to offset economic-loss benefits—and plaintiff failed to provide signed responses to the request.[4]

At a hearing on plaintiff's motion, the trial court reasoned that plaintiff's benefits could not become "overdue" under the no-fault act until plaintiff presented defendants with reasonable proof of loss and amount of loss. As such, the trial court turned to the issue of whether plaintiff presented such reasonable proof. Based on the documents presented, the trial court concluded that the record was insufficient to determine whether plaintiff presented reasonable proof of the amount of her loss; therefore, factual disputes remained as to whether payments for her benefits were overdue under the no-fault act. The trial court denied plaintiff's motion.

In November 2013, the matter proceeded to a bench trial. Kathleen Green, a former claims adjuster for Amerisure, testified that she initially believed that Amerisure's policy did not cover Fadil, given that he was not technically an employee of Real-Trans. In September 2012,

---

[3] Despite ruling that State Farm was not obligated to pay PIP benefits, the trial court nevertheless ruled that plaintiff could pursue State Farm for attorney fees under the no-fault act.

[4] Plaintiff subsequently entered into a stipulation to dismiss her remaining claims against Lancer.

Green sent plaintiff a request for information regarding replacement services; plaintiff did not provide a response to this request until June 19, 2013, when she submitted a signed response to Amerisure's second request for interrogatories. The response stated that "[p]roof will be provided at trial through the testimony of the decedent's widow." Green also stated that plaintiff's information about replacement services—which stated that Fadil was away from home for five to six days per week and that he did normal household chores—was not specific enough to establish reasonable proof of loss.

Regarding economic loss, Green testified that she received the 2012 CPA report and 2013 amended report, but testified that she lacked information to substantiate certain assumptions made in the report. She was unable to calculate benefits from the report and subsequent amendment. She also testified that Fadil's tax returns did not enable her to determine economic-loss benefits in this case. For instance, they did not provide effective tax rates, nor did the CPA report. Regarding the "paystubs," Green testified that they were "just a bunch of numbers that I couldn't interpret." Further, she testified that, although plaintiff presented information regarding social security benefits, which are to be offset against PIP benefits for survivor's loss, were missing pages. As a result of the above, Green was unable to calculate economic-loss benefits.

Dennis M. Echelbarger, a certified public accountant who works at the firm that produced the 2012 CPA report, testified that the report was insufficient to provide reasonable proof of loss as to the amount of PIP benefits to which plaintiff was entitled. He testified that plaintiff's counsel did not ask his firm to do enough work to determine reasonable proof of loss. For instance, his firm was not asked to factor plaintiff's social security benefits into the amount of benefits claimed. Further, he testified that his firm lacked sufficient information to calculate Fadil's effective tax rates, and that his firm was not provided with information to determine the amount of Fadil's expenses in relation to the $10,000 loan.

Concerning her claim for replacement services, plaintiff testified regarding Fadil's work schedule and how often he was home, and estimated that Fadil was home five to six days per month, and that he took approximately two weeks of vacation per year. However, Fadil's work schedule sometimes fluctuated. She did not hire anyone to perform any services after Fadil's death. She also testified concerning the costs of Fadil's funeral; she sent receipts for the funeral and burial costs to each of the defendants in this case in 2013.

At the close of plaintiff's case-in-chief, Amerisure moved for what it termed a "directed verdict."[5] The trial court granted the motion. With regard to funeral benefits, the trial court found that defendants were not liable for statutory interest and attorney fees because funeral and burial costs were not PIP benefits under MCL 500.3107 at the time of Fadil's death.[6]

---

[5] In cases involving bench trials, such as the case at bar, a motion for a directed verdict is to be treated as a motion for involuntary dismissal pursuant to MCR 2.504(B)(2). *Stanton v Dachille*, 186 Mich App 247, 261; 463 NW2d 479 (1990) ("A motion for a directed verdict is more properly made in a jury trial, while a motion to dismiss is used in a bench trial.").

[6] Before the trial court, plaintiff made no effort to argue that the amended version of MCL 500.3107 applied retroactively; she simply contended that the new version of the statute applied

Concerning replacement services, the trial court found that plaintiff failed to present evidence that someone else provided replacement services or that plaintiff incurred expenses for such services. Concerning economic-loss benefits, the trial court found that the 2012 CPA report and updated version of that report failed to provide reasonable proof of the amount of loss. Notably, the court found that the reports lacked certain information and that Echelbarger testified that the reports were not intended to serve as proof of loss. The trial court entered judgment in favor of defendants.

Plaintiff now appeals as of right.

## II. PLAINTIFF'S CLAIMS AS TO STATE FARM

As an initial matter, we find that there is no merit to any of plaintiff's claims as they pertain to State Farm. The trial court found that State Farm had no liability to plaintiff on her claim for benefits or overdue benefits. As discussed in detail below, liability for statutory interest and attorney fees is predicated on benefits being overdue. Because State Farm did not owe any benefits, it cannot be said that any benefits were overdue. *Frazier v Allstate Ins Co*, 490 Mich 381, 387; 808 NW2d 450 (2011); *Moore v Secura Ins*, 482 Mich 507, 526-527; 759 NW2d 833 (2008) (rejecting the conclusion that it was possible for an insurer to unreasonably refuse to pay benefits even when the insurer is later deemed not liable for such benefits). We affirm the trial court's rulings with regard to State Farm on this alternative ground. See *Grand Trunk Western RR, Inc v Auto Warehousing Co*, 262 Mich App 345, 354; 686 NW2d 756 (2004) ("This Court will not reverse an order of the trial court if the court reached the right result for the wrong reason."). Thus, the remainder of our discussion will focus on plaintiff's claims as to Amerisure.

## III. SUMMARY DISPOSITION AS TO ECONOMIC LOSS AND REPLACEMENT SERVICES

### A. STANDARD OF REVIEW

Plaintiff argues that the trial court erred by denying her September 27, 2013 motion for summary disposition on the issue of whether Amerisure and State Farm were liable for attorney fees and statutory interest under the no-fault act. The trial court denied summary disposition pursuant to MCR 2.116(C)(10). We review de novo a trial court's decision regarding a motion for summary disposition. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). We review a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citations omitted).

---

in this case, without recognizing that a previous version of the statute was in effect at the time of the accident at issue.

## B. SURVIVOR'S LOSS BENEFITS

Under the no-fault act, "a PIP provider is liable 'to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . .' " *McPherson v McPherson*, 493 Mich 294, 296-297; 831 NW2d 219 (2013), quoting MCL 500.3105(1). We first consider plaintiff's claim for survivor's loss benefits in the form of economic loss and replacement services.[7] The no-fault act includes PIP benefits for survivors' loss as follows:

(1) Except as provided in subsection (2), personal protection insurance benefits are payable for a survivor's loss which consists of a loss, after the date on which the deceased died, of contributions of tangible things of economic value, not including services, that dependents of the deceased at the time of the deceased's death would have received for support during their dependency from the deceased if the deceased had not suffered the accidental bodily injury causing death and expenses, not exceeding $20.00 per day, reasonably incurred by these dependents during their dependency and after the date on which the deceased died in obtaining ordinary and necessary services in lieu of those that the deceased would have performed for their benefit if the deceased had not suffered the injury causing death. Except as provided in section (2) the benefits payable for a survivors' loss in connection with the death of a person in a single 30-day period shall not exceed $1,000.00 for accidents occurring before October 1, 1978, and shall not exceed $1,475.00 for accidents occurring on or after October 1, 1978, and is not payable beyond the first three years after the date of the accident.

(2) The maximum payable shall be adjusted annually to reflect changes in the cost of living under rules prescribed by the commissioner. A change in the maximum shall apply only to benefits arising out of accidents occurring subsequent to the date of change in the maximum. The maximum shall apply to the aggregate benefits for all survivors payable under this section on account of the death of any one person. [MCL 500.3108.]

Survivor's loss benefits are composed of two elements: "(1) economic loss . . . which is the loss of contributions of tangible things of economic value, not including services, and (2) replacement services costs . . . which are the expenses, not exceeding $20 a day, reasonably incurred in replacing ordinary and necessary services." *Wood v Auto-Owners Ins Co*, 469 Mich 401, 404; 668 NW2d 353 (2003). The amount owed for economic-loss benefits must be offset against any benefits that are required to be provided by the laws of this state or any other state or the federal government, such as Social Security benefits or workers' compensation benefits. MCL 500.3109(1); *Wood*, 469 Mich at 404. Benefits for replacement services under § 3108(1) are available only to the extent of the expenses that a dependent incurred on replacement services. MCL 500.3108 ("[PIP] benefits are payable for expenses, not exceeding $20.00 per day, reasonably *incurred* by these dependents during their dependency and after the date on

---

[7] Plaintiff's claim for funeral and burial expenses is discussed in Issue V, *infra*.

which the deceased died in obtaining ordinary and necessary services in lieu of those that the deceased would have performed for their benefit . . . .") (emphasis added). A plaintiff seeking replacement services need not provide formal documentation of an agreement to pay for services; rather, a plaintiff need only establish that she incurred a liability. *Fortier v Aetna Cas & Surety Co*, 131 Mich App 784, 791; 346 NW2d 874 (1984). See also *Richardson v Detroit Auto Inter-Ins Exch*, 180 Mich App 704, 708-709; 447 NW2d 791 (1989).

## C. PENALTY INTEREST AND ATTORNEY FEES

Here, the only issue plaintiff raises with regard to survivor's loss benefits is whether those benefits were overdue, which would entitle her to attorney fees and statutory penalty interest under the no-fault act. Concerning attorney fees, MCL 500.3148(1) provides that:

> (1) An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

PIP benefits are "overdue" "if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). See also *Moore*, 482 Mich at 517.

Thus, the no-fault act establishes two prerequisites for an award of attorney fees under act. *Brown v Home-Owners Ins Co*, 298 Mich App 678, 690; 828 NW2d 400 (2012).

> First, the benefits must be overdue, meaning "not paid within 30 days after [the] insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). Second, in postjudgment proceedings, the trial court must find that the insurer "unreasonably refused to pay the claim or unreasonably delayed in making proper payment." MCL 500.3148(1). [*Moore*, 482 Mich at 517.]

Regarding penalty interest, MCL 500.3142(3) provides that "[a]n overdue payment bears simple interest at the rate of 12% per annum." A benefit is overdue only after the insurer receives reasonable proof of the fact and of the amount of loss sustained. MCL 500.3142(2); *Moore*, 482 Mich at 517. An award of penalty interest only requires reasonable proof of loss; the insurer's motive for denying payment is irrelevant. *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 68-69; 457 NW2d 637 (1990); *Morales v State Farm*, 279 Mich App 720, 730; 761 NW2d 454 (2008) ("Penalty interest must be assessed against a no-fault insurer if the insurer refused to pay benefits and is later determined to be liable, irrespective of the insurer's good faith in not promptly paying the benefits.") (citation and quotation omitted).

As an initial matter, we note that plaintiff describes this case as a priority dispute amongst insurers, and argues that Amerisure's initial refusal to pay benefits was caused by a priority dispute. She contends that a priority dispute among insurers is not a valid reason for denying benefits. On this point, we agree with plaintiff. See *Karmol v Encompass Prop & Cas Co*, 293 Mich App 382, 391; 809 NW2d 631 (2011). However, we do not end our analysis of this issue

here, as plaintiff would have us do. Rather, contrary to plaintiff's contentions, we emphasize that the insured's presentation of reasonable proof of loss and of the amount of loss is a prerequisite to the insured incurring liability for both penalty interest and attorney fees. See *Moore*, 482 Mich at 510-511, 517; *Roberts v Farmers Ins Exch*, 275 Mich App 58, 67; 737 NW2d 332 (2007) ("Benefits are overdue if they are not paid within 30 days after the insurer receives reasonable proof of the fact and amount of the loss sustained."). Thus, if, as the trial court found, plaintiff failed to present reasonable proof of the amount of loss, there can be no liability for attorney fees or penalty interest. And, any priority dispute between Amerisure and the other defendants in this case would not excuse plaintiff's responsibility to present such reasonable proof. Benefits could not be "overdue" under the no-fault act without such reasonable proof of loss and of the amount of loss. See *Moore*, 482 Mich at 510-511, 517.

Presenting "reasonable proof" of loss and of the amount of loss does not mean that plaintiff was required to present exact proof of the amount of the loss sustained. *Williams v AAA Michigan*, 250 Mich App 249, 267, 264; 646 NW2d 476 (2002). Reasonable proof of loss requires different types of information depending on the benefit sought. *Cruz v State Farm Mut Auto Ins Co*, 466 Mich 588, 596; 648 NW2d 591 (2002). Plaintiff, as the claimant, bore the burden of supplying reasonable proof of loss and proof of amount of loss. *Moore*, 482 Mich at 523. Here, there was never a dispute as to the loss; the only dispute was as to the amount of loss and whether plaintiff presented reasonable proof thereof.

## D. APPLICATION

We conclude that the trial court did not err in finding that there was a genuine issue of material fact concerning whether plaintiff presented reasonable proof of loss at the time of the hearing on her September 27, 2013 motion for summary disposition.

As to economic loss, summary disposition in plaintiff's favor was not appropriate as she failed to demonstrate that there was no genuine issue of material fact concerning reasonable proof of the amount of economic loss. Plaintiff presented Amerisure with a series of documentary evidence, each of which either raised questions about the document itself or rendered questionable other documents that plaintiff submitted. For instance, plaintiff's answers to Amerisure's interrogatories, a signed copy of which was not filed until a year after such responses were sought, failed to specify the amount of social security benefits. This amount was necessary for determining the amount the benefits should be offset. More significantly, the documentary evidence revealed questions of fact about the amount purportedly sought by plaintiff. Plaintiff first submitted tax returns and the ambiguous "paystubs." The tax returns that plaintiff submitted as proof of the amount of the economic loss showed that Fadil operated at a net loss of nearly $3,000 in 2010. In addition, the "paystubs" plaintiff submitted as support for the amount sought were largely indecipherable. They contained numerous deductions and figures that were not explained in any fashion. As one example of the uncertainty of the "paystubs," we note that the documents showed what appeared to be a year-to-date pay, as suggested by a "YTD" designation, decreasing from one week to the next, despite what purported to be a payment of over $600 to plaintiff for a particular week. Plaintiff provided no explanation for these paystubs.

-8-

After submitting the tax returns and paystubs—which never specified an amount that plaintiff sought—plaintiff submitted the 2012 CPA report.[8] The CPA report contained numerous assumptions, some of which could have potentially had a significant effect on the amount sought by plaintiff. As noted, some of those assumptions were made with no supporting evidence. Green testified at her deposition that these assumptions gave her pause in evaluating plaintiff's claim. The CPA report also expressly stated that it was incomplete, based on missing information about the loan and expenses associated therewith. The report stated that plaintiff's counsel would need to update the amount sought after more information was discovered about the loan amount. In addition, the amount sought in the report was rendered questionable in light of the documents plaintiff previously submitted, such as the 2010 tax return that showed that Fadil's trucking business operated at a net loss of approximately $3,000.

In sum, there were significant questions concerning Fadil's income and tax information, as well as any potential offset for Social Security benefits; this information was necessary for a determination of economic benefits under MCL 500.3108. See *Wood*, 469 Mich at 404-406; *Miller v State Farm Mut Auto Ins Co*, 410 Mich 538, 564-565; 302 NW2d 537 (1981). These unanswered questions about pertinent financial information left questions of fact as to the issue of whether plaintiff presented reasonable proof of the amount of the loss. The trial court did not err when it declined to grant summary disposition to plaintiff in light of the uncertainty noted above. See *Latham*, 480 Mich at 111.

Likewise, with respect to replacement services and whether plaintiff presented reasonable proof of the amount of loss, the trial court did not err in denying summary disposition to plaintiff. Plaintiff's documentary evidence revealed conflicting evidence regarding the number of days that Fadil was home in a typical month. And, significantly, while plaintiff alleged that Fadil performed services around the house when he was home, she failed to allege that she incurred any expenses for replacement services. See *Fortier*, 131 Mich App at 791. Plaintiff's deposition testimony gave no indication that she incurred any expenses for replacement services. Nor did her answers to Amerisure's interrogatories. In fact, plaintiff's counsel stated at one point, "[p]roof will be provided *at trial* through the testimony of the decedent's widow." Furthermore, though plaintiff argues that Amerisure should have done further investigation to obtain reasonable proof, such a duty for an insurer does not exist unless the insurer has already been provided with reasonable proof of loss and amount of loss and that insurer wishes to challenge the proof provided. See *Williams*, 250 Mich App at 267 (stating that if the insurer had wanted to challenge the amount alleged by the insured, the insurer "could have and should have conducted some investigation of its own during the thirty-day legislative grace period to establish a lesser amount of uncoordinated benefits owed."). In light of the conflicting documentary evidence and uncertainty, summary disposition was not appropriate. See *Latham*, 480 Mich at 111.

---

[8] She also submitted the 2013 report, which was largely the same as the initial report.

## IV. INVOLUNTARY DISMISSAL AS TO ECONOMIC LOSS AND REPLACEMENT SERVICES

### A. STANDARD OF REVIEW

Next, plaintiff argues that even if she was not entitled to summary disposition with regard to her request for attorney fees and statutory interest on her claim for survivor's loss benefits under MCL 500.3108, the trial court erred by granting Amerisure's motion for involuntary dismissal. This Court reviews a trial court's decision regarding a motion for involuntary dismissal for clear error.[9] *Phillips v Deihm*, 213 Mich App 389, 397; 541 NW2d 566 (1995). We also review for clear error a trial court's finding whether a communication qualified as a reasonable proof of the fact or amount of loss. *Williams*, 250 Mich App at 265. "The clear-error standard requires us to give deference to the lower court and find clear error only if we are nevertheless left with the definite and firm conviction that a mistake has been made." *Arbor Farms, LLC v GeoStar Corp*, 305 Mich App 374, 386-387; 853 NW2d 421 (2014) (citation and quotation marks omitted).

### B. REASONABLE PROOF OF ECONOMIC LOSS

The trial court did not clearly err when it found that plaintiff failed to present reasonable proof of the amount of economic loss. As noted above in the discussion about summary disposition, although the 2012 CPA report contained a specific dollar amount, the documentary evidence—including the CPA report itself—showed ample reason to doubt that amount. The CPA report itself contained several caveats and assumptions. As noted, some of those assumptions were inconsistent with the documentary evidence plaintiff presented. Further, the CPA report itself stated that it had to be updated after more information was gathered by plaintiff's counsel concerning the amount left on Fadil's loan and expenses associated therewith. And, significantly, Echelbarger testified at trial that his firm was not hired to calculate and provide reasonable proof as to the amount of PIP benefits to which plaintiff was entitled. According to Echelbarger, plaintiff did not provide his firm with enough information to make the necessary calculations. He also testified that Fadil's 2011 tax return did not account for the $66,000 of revenue that purported to appear on the paystubs from Real-Trans; these paystubs were nearly indecipherable, given their lack of explanation for any of the figures or deductions noted therein. Plaintiff failed to present testimony to explain the paystubs.

In addition, Green testified at trial that she was unable to calculate economic benefits from any of the information that plaintiff gave her. Green also testified that Fadil's tax returns

---

[9] In reviewing this issue, the trial court, treating Amerisure's request as a request for a directed verdict, reviewed the evidence in a light most favorable to plaintiff, the non-moving party. The trial court was not required to view the evidence in such a light. Rather, "[t]he involuntary dismissal of an action is appropriate where the trial court, when sitting as the finder of fact, is satisfied at the close of the plaintiff's evidence that 'on the facts and the law the plaintiff has shown no right to relief.' " *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995).

showed conflicting information regarding workers' compensation expenses. She also noted some of the missing information from the 2012 CPA report and the ambiguity in the Real-Trans paystubs. Plaintiff's information regarding Social Security benefits was missing pages, and such information was necessary to determine whether an offset was appropriate. So too was information regarding Fadil's effective tax rates, and plaintiff never supplied such information.

In sum, although reasonable proof need not be exact proof, we cannot conclude that the trial court, when viewing the totality of the evidence, clearly erred in finding that plaintiff failed to present reasonable proof of the amount of the economic loss claimed. See *Williams*, 250 Mich App at 267. Plaintiff only presented one document—the CPA report—that provided a definitive amount of benefits she claimed. The amount listed was rendered questionable in light of the numerous assumptions—some of which were taken without any support in accompanying documentary evidence. The CPA report itself stated that the amount needed to be updated, and Echelbarger testified that the report and amount set forth therein were never intended to be reasonable proof of the amount of plaintiff's economic loss. Further, the report was rendered suspect in light of other documentary evidence plaintiff submitted, such as Fadil's tax returns and the ambiguous "paystubs." The totality of the deficiencies in the documents produced by plaintiff and of the testimony at trial leads us to conclude that the trial court did not clearly err in finding that plaintiff failed to produce reasonable proof of the amount of economic loss. Because she failed to present reasonable proof of the amount of her loss, she was not entitled to statutory interest or attorney fees under the no-fault act, as no benefits could become "overdue" without reasonable proof of loss. *Moore*, 482 Mich at 510-511, quoting MCL 500.3142(2) (holding that under the no-fault act, PIP benefits "become 'overdue' when an insurer fails to pay 'within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained.'").

## C. REASONABLE PROOF OF REPLACEMENT SERVICES

In addition, the trial court did not clearly err in finding that plaintiff failed to present reasonable proof of her replacement services. Again, plaintiff failed to present evidence that she incurred any expenses. See *Fortier*, 131 Mich App at 791. See also *Douglas v Allstate Ins Co*, 492 Mich 241, 267-270; 821 NW2d 472 (2012) (holding that expenses must be incurred before an insurer becomes liable to pay them). The documentary evidence plaintiff provided was inconsistent with regard to the number of days that Fadil was gone, was not specific as to the services he performed, and it provided no indication that plaintiff incurred any expenses. Plaintiff's trial testimony similarly failed to indicate any expenses that were incurred. In sum, there is no evidence that Amerisure was ever provided with evidence of expenses plaintiff incurred in obtaining replacement services. The trial court did not clearly err in finding that there was no reasonable proof of loss for replacement services. See *Arbor Farms, LLC*, 305 Mich App at 386-387. Accordingly, plaintiff could not show that any benefits for replacement services were overdue, and Amerisure was entitled to involuntary dismissal as to plaintiff's request for statutory interest and attorney fees under the no-fault act. See *Moore*, 482 Mich at 510-511.

## V. FUNERAL AND BURIAL EXPENSES

Lastly, we address plaintiff's claims concerning funeral and burial expenses. MCL 500.3107 concerns funeral and burial expenses. Unlike her claims for economic losses and

replacement services, plaintiff provided proof of her funeral expenses, as she submitted funeral receipts to Amerisure in March 2013. The trial court concluded that plaintiff could not maintain a claim for attorney fees and statutory interest under the no-fault act in relation to the funeral and burial expenses because, at the time of Fadil's accident, such expenses were not considered to be within the ambit of PIP benefits under MCL 500.3107. As discussed in more detail below, the statute was amended after plaintiff filed her complaint in this case. Plaintiff argued before the trial court, without recognizing that there was a potential problem with retroactivity,[10] that the amended statute should apply. On appeal, she argues that the amended version of the statute should apply retroactively, and that under the amended version of the statute, funeral and burial expenses were overdue, and that she is entitled to statutory interest and attorney fees as a result.

## A. STANDARD OF REVIEW

Because plaintiff did not preserve this argument for appeal and the trial court was not asked to rule on the matter, we will address the matter for plain error affecting substantial rights. *Richard v Schneiderman & Sherman, PC (On Remand)*, 297 Mich App 271, 273; 824 NW2d 573 (2012). "Plain error occurs at the trial court level if (1) an error occurred (2) that was clear or obvious and (3) prejudiced the party, meaning it affected the outcome of the lower court proceedings." *Id.* (quotation omitted).

## B. FUNERAL AND BURIAL BENEFITS UNDER MCL 500.3107(1)

At the time of Fadil's death in 2011, MCL 500.3107(1)(a) delineated certain "allowable expenses" that could be recovered as PIP benefits. Concerning funeral and burial expenses, MCL 500.3107(1)(a) provided that: "[a]llowable expenses within personal protection insurance coverage shall not include . . . funeral and burial expenses in the amount set forth in the policy which shall not be less than $1,750.00 or more than $5,000.00." In *Wood v Auto-Owners Ins Co*, 252 Mich App 87, 93; 651 NW2d 118 (2002), aff'd in part and reversed in part 469 Mich 401 (2003), this Court interpreted MCL 500.3107(1)(a) to mean that funeral and burial expenses under an insurance policy were not PIP benefits. In particular, we stated that "[t]he clear and unambiguous language of § 3107 establishes that the funeral and burial expenses benefit under an insurance policy is not personal protection insurance coverage." *Id.* Our Supreme Court subsequently affirmed this Court's opinion in *Wood* in part and reversed in part. See *Wood*, 469 Mich 401. Of note, the Supreme Court expressly affirmed this Court's holding that funeral and burial expenses were not PIP benefits under the then-existing version of MCL 500.3107(1)(a). *Id.* at 402 n 1 ("In particular, we affirm the judgment of the Court of Appeals concerning funeral benefits under MCL 500.3107.").

In 2012 PA 542, the Legislature amended MCL 500.3107(1). The amendment was effective January 2, 2013. See 2012 PA 542. The amendment made no mention of retroactivity. Among the changes made, the statute now provides that "[a]llowable expenses within personal

---

[10] Indeed, she made no argument that the amended version of the statute should apply retroactively. She simply cited the current version of the statute and asked for attorney fees and statutory interest.

protection insurance coverage shall not include . . . (*ii*) [f]uneral and burial expenses *in excess* of the amount set forth in the policy which shall not be less than $1,750.00 or more than $5,000.00." MCL 500.3107(1)(a)(*ii*) (emphasis added). Unlike the prior version of the statute, the current version now states that funeral and burial expenses are within PIP coverage, so long as those expenses are not in excess "of the amount set forth in the policy which shall not be less than $1,750.00 or more than $5,000.00." Thus, under the current version of the statute, plaintiff could recover funeral and burial costs, within certain parameters, as PIP benefits. To determine whether those benefits were "overdue" under the no-fault act, we must decide whether the amended statute applies retroactively. If the statute does not apply retroactively, funeral and burial costs would not be PIP benefits in this case, and the non-payment of such benefits would not subject Amerisure to statutory interest and attorney fees under the no-fault act.

## C. THE AMENDMENT TO MCL 500.3107(1) DOES NOT APPLY RETROACTIVELY

We find that the amended version of the statute does not apply retroactively, meaning that there were no benefits that were overdue, and that any refusal to pay was not unreasonable.

In determining whether a statute should be applied retroactively, "the primary and overriding rule is that legislative intent governs. All other rules of construction and operation are subservient to this principle." *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 583; 624 NW2d 180 (2001) (citation and quotation marks omitted).

> Statutes are presumed to apply prospectively unless the Legislature clearly manifests the intent for retroactive application. This is especially true when giving a statute retroactive operation will . . . create a new liability in connection with a past transaction, or invalidate a defense which was good when the statute was passed. Further, [e]ven if the Legislature acts to invalidate a prior decision of this Court, the amendment is limited to prospective application if it enacts a substantive change in the law. [*Johnson v Pastoriza*, 491 Mich 417, 429; 818 NW2d 279 (2012) (citations and quotation marks omitted; alteration in original).]

Further, when the Legislature provides a specific, future effective date and omits any reference to retroactivity, such reference supports the conclusion that the statute applies prospectively only. *Id.* at 432.

Nevertheless, our Supreme Court has recognized an exception to the presumption against retroactivity for certain "remedial statutes," or "statutes which operate in furtherance of a remedy or mode of procedure and which neither create new rights nor destroy, enlarge, or diminish existing rights are generally held to operate retrospectively unless a contrary legislative intent is manifested." *Id.* at 432-433, quoting *Lynch & Co*, 463 Mich at 584. Simply calling a statute "remedial," however, does not support a finding of retroactivity. *Id.* Instead, the term "remedial" "in this context should only be employed to describe legislation that does not affect substantive rights. Otherwise, [t]he mere fact that a statute is characterized as 'remedial' . . . is of little value in statutory construction." *Lynch & Co*, 463 Mich at 585 (citation and quotation marks omitted; alteration in original). See also *Johnson*, 491 Mich at 433.

Although the no-fault act has been characterized as remedial in nature, see, e.g., *Gobler v Auto-Owners Ins Co*, 428 Mich 51, 61; 404 NW2d 199 (1987), we find that the amendment to § 3107(1) should not apply retroactively. Applying the amended version of § 3107(1) retroactively would affect substantial rights. Namely, it would create a new cause of action for statutory interest and attorney fees under the no-fault act where such a cause of action did not previously exist. See *Johnson*, 491 Mich at 433-434 (declining to apply a statute retroactively where it affected substantial rights by creating a cause of action where one did not previously exist). Accordingly, we decline to apply the amended version of § 3107(1) retroactively. See *id.* See also *Lynch & Co*, 463 Mich at 586.

In reaching this conclusion, we reject plaintiff's assertion that we should find in favor of retroactivity because the amendment of § 3107(1) was intended, according to plaintiff, to correct a mistake in the law. Cf. *Mackinac Bridge Auth v Silicosis, Dust Disease, and Logging Indus Compensation Fund*, 208 Mich App 460, 465-466; 529 NW2d 315 (1995) (finding in favor of retroactivity where the statute at issue was intended to remedy a past error of law). Here, the version of § 3107(1) that was in effect at the time of Fadil's accident had been in effect for 20 years. And, we note that the Legislature is presumed to act with knowledge of judicial interpretations. *Van Buren Twp v Garter Belt, Inc*, 258 Mich App 594, 606-607; 673 NW2d 111 (2003). Thus, the Legislature is presumed to be aware of this Court's decision in *Wood* and—our Supreme Court's express affirmation of that decision with regard to funeral and burial costs—when it amended § 3107(1). Despite such knowledge, the Legislature made no mention of retroactivity when it amended the statute. The intent of the Legislature is to govern, see *Lynch*, 463 Mich at 585, and we find that there is no clear expression of Legislative intent concerning retroactivity.

In sum, we find that the amended version of § 3107(1) does not apply retroactively, meaning that funeral and burial costs were not to be considered PIP benefits in this case, in accordance with our decision in *Wood*, 252 Mich App at 92-93. As such, there could be no PIP benefits that were overdue, meaning that there could be no statutory interest or attorney fees premised on overdue PIP benefits. Furthermore, with regard to attorney fees, which requires an inquiry into whether the decision to deny benefits was reasonable, "[a]n insurer may justify its refusal to pay a claimant benefits by showing that the claim presented a legitimate question of statutory construction, constitutional law, or factual uncertainty." *Johnson*, 298 Mich App at 691. See also *Rice v Auto Club Ins Ass'n*, 252 Mich App 25, 39; 651 NW2d 188 (2002) (holding that the insurer did not act unreasonably where there was a legitimate question about the statutory requirements in that case). Here, there was a legitimate question concerning whether the amended version of § 3107(1) applied retroactively. Therefore, even if the statute applied retroactively—which we conclude it does not—plaintiff would not be entitled to attorney fees in this case. See *Johnson*, 298 Mich App at 691; *Rice*, 252 Mich App at 39. See also *Tevis v Amex Assurance Co*, 283 Mich App 76, 89-90; 770 NW2d 16 (2009) (holding that the insurer's initial denial of PIP benefits was not unreasonable where the pertinent law was "often subject to dispute and not entirely resolved . . . .").

Affirmed.

/s/ Jane M. Beckering
/s/ Jane E. Markey

-14-